Kenneth L. Neeley #25899
Brian M. Blum #24243
James R. Tschudy #27039
Joseph P. Brown #25381
NEELEY LAW FIRM, PLC
2250 E. Germann Rd., Suite 11
Chandler, AZ 85286
Phone: 480.802.4647
Fax: 480.907.1648
ecf@neeleylaw.com
*Attorneys for Debtors*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Kenneth Eugene McNair and Veta Rose McNair,<br><br>　　　　Debtors. | Chapter 7<br><br>Case No. 2:13-bk-01157-EPB<br><br>**RESPONSE TO TRUSTEE'S MOTION TO COMPEL TURNOVER OF ESTATE PROPERTY** |

Kenneth McNair, 72, and Veta McNair, 70, are retirees. The McNairs live modestly in their 30 year old, single-wide, mobile home which sits upon rented space in Apache Junction. The McNairs' income consists solely of social security and Mrs. McNair's schoolteacher pension from the Arizona State Retirement System ("ASRS"). They spend nearly as much on prescription medication as they do on food.

Over the past few years, the McNairs have done their best to reduce expenses wherever they can. To that end, they surrendered their interest in a recreational vehicle and allowed their home to foreclose. They then purchased the $8,000 mobile home mentioned above. Also to save money, the McNairs frequently travel to Mexico where they can purchase prescription drugs at a discount.

Mr. McNair is in poor health; since filing this bankruptcy case he has suffered two major heart surgeries—the most recent of which was in July. Sixty percent of his heart is not functioning. Mrs. McNair needs dental work to replace missing teeth, but she cannot afford this procedure.

## I. Issue

The Trustee alleges that the McNairs have concealed $5,991 in cash from the bankruptcy estate and on that basis alone demands turnover of this asset. The Trustee has no direct evidence of concealment; rather, he bases this serious allegation on a series of cash withdrawals from the McNairs bank account in the months leading up to the bankruptcy filing. Although not mentioned in the Trustee's motion itself, Exhibit B contains a breakdown of the cash withdrawals in question:

| Date | Amount |
|---|---|
| 1/23/2013 | $1,180 |
| 1/3/2013 | $1,511 |
| 12/3/2012 | $1,600 |
| 11/2/2012 | $1,700 |

As the Trustee and his counsel know, a money judgment was entered against the McNairs in September 2012. In October the judgment creditor sent an alarming letter to the McNairs, threatening garnishment of earnings and bank accounts. Immediately after receiving that letter, the McNairs consulted with attorney Joseph Brown of the undersigned law firm to discuss their options for avoiding garnishments.

The McNairs were advised that their social security income was protected from creditors, but the pension income was exposed once deposited into a bank account. The McNairs therefore withdrew the bulk of the pension money each month as it was deposited by the ASRS. And, in the days leading up to filing the bankruptcy case, they also withdrew the social security money. To summarize:

| Deposit Source | Deposit Date | Deposit Amount | Withdrawal Date | Withdrawal Amount |
|---|---|---|---|---|
| Soc. Sec. | 1/23/2013 | $1,199 | 1/23/2013 | $1,180 |
| ASRS | 1/2/2013 | $2,141 | 1/3/2013 | $1,511 |
| ASRS | 11/30/2012 | $2,141 | 12/3/2012 | $1,600 |
| ASRS | 11/1/2012 | $2,141 | 11/2/2012 | $1,700 |

The Trustee knows these facts; he also knows that the McNairs live check-to-check and do not have the means to squirrel away $6,000 and still afford basic living

expenses. But, the Trustee continues to push this issue, because he is emboldened from previous cases where similar allegations resulted in settlements from debtors who apparently could not engage in protracted litigation. (Affidavit of Kenneth L. Neeley, ¶ 4–6.)

The Trustee's position is that if a debtor cannot prove, with documentation, how money was spent, then the debtor must presumably still have it and must turn it over.

### a. Lack of Documentary Evidence Alone is Not Sufficient to Find Concealment

To support his legal theory the Trustee directs our attention to the Roaring Twenties yarn of New York City textile manufacturer Herbert Magen. *In re H. Magen Co., Inc.*, 10 F.2d 91 (2d Cir. 1925). Four years into its existence, in February 1924, Mr. Magen's company became the debtor in an involuntary bankruptcy case. *Id*. Presumably, Mr. Magen saw the writing on the wall, as he began planning a "bold and outrageous fraud" four months prior. *Id*. at 93.

In those several weeks leading up to the bankruptcy, Mr. Magen increased the company's purchases of materials to 20 times more than any similar period in the company's history. The evidence showed that the increase in purchases "were out of all proportion to the needs of the bankrupt's business." *Id*. The court also noted that, in the past, all of the materials purchased were used to manufacture goods, but during this pre-bankruptcy window, the debtor began selling large amounts of raw materials. The "sales," it turned out, were fictitious.

The overwhelming evidence of Mr. Magen's deceit, led the court to hold,

> [i]f a bankrupt is shown to have purchased large amounts of property within a short period prior to his bankruptcy, and has only a nominal amount in his possession at the time of his bankruptcy, and is unable or unwilling to explain what he has done with it, it is not unreasonable to infer that he has it in concealment.

*Id*. In other words, the Second Circuit's 88-year-old holding is not simply "give us the

receipts or give us the cash" as the Trustee implies. The actual holding is much more nuanced and practical.

The remainder of the Trustee's legal argument is devoted to spelling out the Debtors' obligation to cooperate with the Trustee and to hand over estate property when asked. The Debtors acknowledge those obligations, but the fact of the matter is the Debtors spent the cash on living expenses before the case was filed.

### b. The Trustee Has Not Met His Burden of Proof

While we are gleaning what we can from pre-Bankruptcy Code decisions, the Supreme Court has noted that the burden of proof is on the trustee to prove, by clear and convincing evidence, the property is property of the bankruptcy estate and that the respondent has it in his possession. *Maggio v. Zeitz (In re Luma Camera Service, Inc)*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948). *But see*, *Newman v. Schwartzer (In re Newman)*, 487 B.R. 193 (9th Cir. BAP 2013) (Noting that *Maggio* is a pre-Bankruptcy Code decision and pointing out that "the plain language of § 542(a) has no 'present possession' requirement.")

In *Maggio*, the Supreme Court rejected the idea that merely proving that the debtor had possession of property at some point in the past is conclusive evidence that he has that property at some point later. *Maggio* at 65–67. There court laid out some common-sense factors to consider,

> With what kind of property do we deal? Was it salable or consumable? The inference of continued possession might be warranted when applied to books of account which are not consumable or marketable, but quite inappropriate under the same circumstances if applied to perishable merchandise or salable goods in considerable demand. Such an inference is one thing when applied to a thrifty person who withdraws his savings account after being involved in an accident, for no apparent purpose except to get it beyond the reach of a tort creditor, see *Rosenblum v. Marinello*, 2 Cir., 133 F.2d 674; it is very different when applied to a stock of wares being sold by a fast-living adventurer using the proceeds to make up the

difference between income and outgo.

*Id.* at 68. Of course, the issue here is slightly different from *Maggio*, in that here we ask the Court to decide whether the Debtors had possession of the money on the date the bankruptcy case was filed, not whether they have possession at the time this issue is resolved. The point is the same though—the Trustee has the burden to prove that the Debtors had the money of the filing date; not that they had it at some point in the past.

The Debtors acknowledge, for the sake of argument, that if they had possession of the money on the filing day and subsequently spent it, that the Trustee could have a money judgment for the value of the property pursuant to the holding in *Newman, supra*.

## II. Analysis

Here, the Debtors have attested, on the schedules, at the 341 meeting, and in affidavits that they had no cash on the day the case was filed. There is no evidence, or even allegation, that the Debtors were setting up a fraud on their creditors as was the case in *Magen*. There is also no direct evidence presented that would suggest the Debtors had any cash on the filing date. To the contrary, the common sense conclusion is that the Debtors were afraid to leave the pension money in their bank account, for fear it would be garnished, so they withdrew it in cash and spent it in the ordinary course of their lives.

Unfortunately, they did not keep perfect records of how this cash was spent. The attached exhibits provide more detail in this area, but not to the level the Trustee demands. The evidence already presented or the Debtors' live testimony about this $6,000 will have to suffice.

## III. Conclusion

The Trustee's opportunistic approach to marshaling assets should not be encouraged. The Debtors acted out of a legitimate fear of losing their pension. Their failure to keep receipts was a result of their naiveté, and they should not be punished as if they had committed fraud. The fact is that these honest people have never been accused of

perjury before, and it never occurred to them that they would need to keep so many records to prove something so obvious—that their fixed government incomes are barely enough to pay their monthly bills.

*Wherefore*, the Debtors request that the Trustee's motion be denied, or in the alternative, that the court conduct an evidentiary hearing where the Debtors may testify and present evidence.

Submitted this 11th day of November, 2013   NEELEY LAW FIRM, PLC

/s/Kenneth L. Neeley
Kenneth L. Neeley
Brian M. Blum
2250 E. Germann Rd., Suite 11
Chandler, AZ 85286
*Attorneys for Debtors*